United States Court of Appeals,

Fifth Circuit.

No. 91-1848.

PALMCO CORPORATION, Plaintiff-Appellee Cross-Appellant,

v.

AMERICAN AIRLINES, INC., Defendant-Appellant Cross-Appellee.

Feb. 22, 1993.

Appeals from the United States District Court for the Northern District of Texas.

Before GOLDBERG, SMITH, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

In this case involving a breach of contract for knives, spoons, and forks ("flatware"), Palmco Corporation claimed that American Airlines did not pay for delivered flatware. American counterclaimed, asserting that Palmco breached the contract by failing to deliver the flatware timely, by failing to make certain deliveries, and by refusing to deliver certain flatware orders unless American agreed to a price increase. The magistrate judge awarded $112,410 in cover damages to American, but held that Palmco was entitled to an offset of $62,870 against these damages for unpaid-for, delivered flatware. The magistrate judge also limited attorneys' fees to 60% of the amount each party recovered as damages. Palmco and American appeal the magistrate judge's assessment of damages and attorneys' fees. We affirm in part, and reverse in part.

I

Palmco contracted to supply American with flatware for its inflight meal service for the period between September 1, 1987 and August 31, 1988. The contract set the prices for the flatware, and also contained a liquidated damages clause in case Palmco made untimely deliveries. Palmco's deliveries were late during the duration of the contract. In addition, Palmco failed to deliver certain orders. American repeatedly explained to Palmco that the late deliveries were causing an inventory shortage. Also, because of Palmco's non-deliveries, American had to place spot orders with other

flatware suppliers to ensure an adequate flatware inventory for the summer months.[1]  The price American paid for flatware under these spot orders was substantially higher than the contract price with Palmco.

In April 1988, Palmco refused to deliver the remaining flatware orders unless American agreed to an approximately 25% price increase.  American attempted to purchase flatware from other suppliers, but determined that none could meet American's demand at the time Palmco's deliveries were due.  American therefore agreed to the price increase for the remaining flatware orders.

In July 1988, American notified Palmco that it was setting off its damages for Palmco's late and non-deliveries against its outstanding account balance, pursuant to Tex.Bus. & Com.Code § 2.717 (Tex.U.C.C.) (Vernon 1968).  In response, Palmco refused to deliver American's remaining orders—30,000 dozen knives.

Palmco filed suit against American for its failure to pay for the flatware American had received, as well as the 30,000 dozen knives Palmco did not deliver to American.[2]  Palmco also sought damages for fraud.  American counterclaimed, asserting that Palmco had breached the contract.  American sought damages for late and non-deliveries, duress damages for the 25% price increase, and recovery for fraud.  By consent of the parties, the case was transferred to a magistrate judge for hearing and determination, pursuant to 28 U.S.C. § 636(c)(1) (1988).

In his findings of fact and conclusions of law, the magistrate judge found the parties' fraud claims to be without merit.  The magistrate judge awarded American $112,410 in cover damages, but declined to award liquidated damages, based upon the conclusion that Texas law prohibits the recovery of both cover and liquidated damages.[3]  As for Palmco, the magistrate judge awarded

---

[1]A spot order is an order for a specified quantity of goods to be provided at a specific time at a specific price, whereas an annual contract involves multiple purchases over the life of the contract. *See* Record on Appeal, vol. 2, at 272.

[2]Palmco claims that it did not deliver the 30,000 dozen knives because American failed to provide adequate assurance of payment. *See* Brief for Palmco at 27.  Palmco therefore claims that equitable principles require that American purchase the knives built to American's specifications. *See id.* at 29-32.

[3]Palmco is a corporation organized under the laws of the state of California, with its principal place of business in California. *See* Record on Appeal, vol. 2, at 271.  American is a Delaware

Palmco $62,870—as an offset against American's damage award—for unpaid-for, delivered flatware. However, the magistrate judge determined that American was not obligated to pay Palmco for the 30,000 dozen knives still in Palmco's possession when American allegedly cancelled the contract. The magistrate judge also found that the agreement to purchase flatware at the 25% price increase was made under duress, and was therefore void. As for attorneys' fees, the magistrate judge awarded each party 60% of the amount each party recovered in damages.

American appeals the magistrate judge's assessment of damages and attorneys' fees, contending that: (1) it is entitled to recover both its cover and liquidated damages; (2) it is entitled to receive additional duress damages resulting from the 25% price increase; (3) it is entitled to additional attorneys' fees based on any additional recovery; and (4) the magistrate judge erred in awarding attorneys' fees to Palmco.

Palmco cross-appeals, claiming that: (1) American was barred from recovery on its contract claims because of its failure to give notice of Palmco's breach; (2) the magistrate judge erred in not requiring American to purchase the 30,000 dozen knives retained by Palmco; and (3) the magistrate judge erred in not awarding Palmco additional attorneys' fees based upon American's post-suit but pre-trial payment of $42,134 for unpaid-for, delivered flatware.

II

A

Palmco argues that American failed to give proper notice of Palmco's breach of contract for untimely deliveries. Under Texas law, a buyer, upon accepting tender, must notify the seller of any breach "within a reasonable time after he discovers any breach ... or be barred from any remedy." Tex.Bus. & Com.Code Ann. § 2.607(c) (Tex.U.C.C.) (Vernon 1968); *see also City of Marshall, Texas v. Bryant Air Conditioning,* 650 F.2d 724, 727 (5th Cir.1981) ("Texas law requires notification by the buyer to the seller that a breach ... has occurred, so that the seller has an opportunity to cure

---

corporation doing business in the state of Texas. *See id.* A choice of law provision in the contract requires that we construe the contract under Texas law. *See* American's Record Excerpt 12, Condition 24; *Eastern Air Lines, Inc. v. McDonnell Douglas Corp.,* 532 F.2d 957, 968 (5th Cir.1976) (construing contract under California law, pursuant to choice of law provision in contract).

the breach.").  In *Eastern Air Lines, Inc. v. McDonnell Douglas Corp.,* 532 F.2d 957 (5th Cir.1976), we outlined a framework for determining whether proper notice has been given under § 2.607.

The magistrate judge did not make a finding whether American gave Palmco proper notice under § 2.607.[4]  Rather, the magistrate judge opined that our decision in *Eastern Air Lines* was "inapposite [to the case before it] ... [because] in *[Eastern Air Lines]* that case the contract at issue was silent as to liquidated damages."  Record on Appeal, vol. 2, at 479.  Thus, we must determine initially whether the magistrate judge erred, as a matter of law, in not applying the notice requirement under § 2.607.  We review questions of law de novo.  *Zimmerman v. H.E. Butt Grocery Co.,* 932 F.2d 469, 471 (5th Cir.), *cert. denied,* --- U.S. ----, 112 S.Ct. 591, 116 L.Ed.2d 615 (1991).  Because no Texas decision holds that the notice requirement under § 2.607 does not apply where the contract contains a liquidated damages clause,[5] the magistrate judge clearly erred in not applying the notice requirement under § 2.607.[6]

We decide, rather than remand, the issue of whether American gave proper notice to Palmco, because the issue is a matter of law based upon the undisputed facts of this case.  *See Carroll Instrument Co. v. B.W.B. Controls,* 677 S.W.2d 654, 657 (Tex.App.—Houston [1st Dist.] 1984, no writ) (providing notice may become a question of law, "where there is no room for ordinary minds to differ as to the proper conclusions to be drawn from the evidence").  Palmco argues that

---

[4]Where a trial court *has* made a determination of proper notice under § 2.607(c), that determination is generally given great weight by a reviewing court.  *T.J. Stevenson & Co., Inc. v. 81,193 Bags of Flour,* 629 F.2d 338, 361 (5th Cir.1980).

[5]The magistrate failed to cite any authority supporting his apparent conclusion that a buyer need not give notice of breach where the underlying contract contains a liquidated damages clause.  *See* Record on Appeal, vol. 2, at 479.  The parties do not dispute that American had to give notice of Palmco's breach of contract for untimely deliveries.  *See* Brief for Palmco at 12-14; Reply Brief for American at 3-4.

[6]The magistrate did make some findings concerning whether American had informed Palmco that it would seek to enforce the liquidated damages clause of the contract.  *See* Record on Appeal, vol. 2, at 281.  However, these findings were apparently made to determine the validity of Palmco's fraud claim, *see id.* at 285, and not to determine if American had given proper notice under § 2.607(c) an altogether different analysis.

American's notice of Palmco's breach of contract for late deliveries was inadequate.[7]  The first breach—for late deliveries—about which American complained occurred on February 3, 1988.  Six weeks later, American wrote a letter to Palmco, stating that its performance under the contract was unacceptable, and that American intended to hold Palmco to the terms of the contract.  *See* Palmco's Record Excerpt 6.  Palmco does not dispute that this letter—dated April 11, 1988—was timely.  Rather, Palmco claims that the letter was inadequate because it did not inform Palmco that its late deliveries constituted a breach of contract.  The last paragraph of the letter states:

> For at least the past five months you have consistently failed to meet your delivery date obligations.  As we have made clear this is totally unacceptable to American Airlines.  We insist that you fulfill all of your contractual obligations.

Record Excerpts for Palmco at tab. 6.  This language, though not explicit, nevertheless sufficed to inform Palmco that its late deliveries constituted a breach of contract.  Consequently, we find that American gave timely and adequate notice of breach.[8]

B

Palmco next argues that the magistrate judge erred in concluding, as a matter of law, that American was not obligated to pay for the 30,000 dozen knives in Palmco's possession when American allegedly cancelled the contract.  We review questions of law de novo.  *See H.E. Butt,* 932 F.2d at 471.

Paragraph VIII of the contract obligated American to buy any "inventory in transit and in process" at the time of American's cancellation of the contract.  Record Excerpts for American at tab. 12.  The parties do not dispute that the 30,000 dozen knives were in transit when the contract was

---

[7]Under § 2.607, "[t]he buyer's conduct ... taken as a whole, must constitute timely notification that the transaction is claimed to involve a breach."  *Eastern Air Lines,* 532 F.2d at 978.

[8]Palmco maintains that American did not provide notice under § 2.607 in good faith.  Palmco specifically alleges that American's actions misled Palmco into believing that its performance under the contract was satisfactory.  A merchant is required to exercise good faith in providing notice of breach, which is measured by reasonable commercial standards of fair dealing in the trade.  *See Eastern Air Lines,* 532 F.2d at 977.  After reviewing the record, we cannot find any acts by American which would have led Palmco to believe that its performance under the contract was satisfactory.  In fact, the record indicates that American repeatedly gave Palmco oral and written expressions of dissatisfaction over Palmco's performance under the contract.  *See* Record on Appeal, vol. 2, at 280-81.  Therefore, American exercised good faith in providing adequate and timely notice to Palmco.

cancelled. *See* Brief for Palmco at 26; Reply Brief for American at 20-22. American, however, contends that it is not obligated to pay for the knives, because Palmco initially breached the contract by failing to deliver the knives. If Palmco breached the contract by failing to deliver the knives, then American had the statutory right to cancel the contract and pursue cover damages. *See* Tex.Bus. & Com.Code Ann. § 2.711(a)(1) (Tex.U.C.C.) (Vernon 1968).

Palmco does not deny that it failed to deliver the knives. Nevertheless, Palmco maintains that it did not breach the contract by failing to deliver the knives. Palmco argues that it rightfully withheld delivery of the knives because American failed to respond to Palmco's request for adequate assurance of payment of outstanding invoices. "When reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until he receives such assurance may if commercially reasonable suspend any performance for which he has not already received the agreed return." Tex.Bus. & Com.Code Ann. § 2.609(a) (Tex.U.C.C.) (Vernon 1968). Palmco contends that American's letter of July 18, 1988—stating that it was going to offset its damages for late and non-deliveries against future invoices, pursuant to Tex.Bus. & Com.Code § 2.717—gave it reasonable grounds for insecurity. *See* Record Excerpts for Palmco at tab. 8. We disagree.

This letter—constituting a notice of offset—precludes Palmco from claiming that American's intention of withholding payment provided reasonable grounds for insecurity. *See* Tex.Bus. & Com.Code § 2.717, comment 2 ("The buyer, however, must give notice of his intention to withhold all or part of the price if he wishes to avoid a default within the meaning of the section on insecurity and right to assurances [§ 2.609(a) ]."). Because Palmco had no reasonable grounds for insecurity, Palmco breached the contract when it failed to deliver the knives. Accordingly, the magistrate judge properly concluded that American was not obligated to pay for the knives.[9]

---

[9]Palmco also raises an equitable claim that American should be compelled to purchase the 30,000 dozen knives built to American's specifications and displaying the "AA" logo, which cannot be sold to anyone else for anything but salvage value. *See* Brief for Palmco at 29-32. Texas courts have refused to grant equitable relief where a party has an adequate remedy at law. *See, e.g., Raine v. Searles,* 302 S.W.2d 486, 487 (Tex.Civ.App.—El Paso 1957, no writ). Palmco had an adequate remedy at law—a breach of contract claim against American for the price of the undelivered 30,000 dozen knives—which it pursued. Palmco's failure to succeed on this

C

(i)

American claims that the magistrate judge erred in concluding, as a matter of law, that American was not entitled to recover both liquidated and cover damages. We review questions of law de novo. *See H.E. Butt,* 932 F.2d at 471.

The magistrate judge found that American incurred liquidated damages in the amount of $81,584, based upon Palmco's late deliveries of flatware under the contract. *See* Record on Appeal, vol. 2, at 453. He also found that American incurred cover damages in the amount of $112,410, because of Palmco's non-deliveries of flatware under the contract. *See id.* at 282. Citing Texas law, the magistrate judge concluded that American was entitled to recover either liquidated or cover damages, but not both. *See id.* at 454-55. Consequently, the magistrate judge awarded only the higher amount of $112,410 in cover damages. *See id.*

Texas law prevents a party from recovering both liquidated and cover damages where both measures compensate a party for the same injury. *See Marcus, Stowell & Beye v. Jefferson Inv. Corp.,* 797 F.2d 227, 233 (5th Cir.1986) ("Under the Texas one satisfaction rule, "an injured party is entitled to but one satisfaction for a single injury....' " (quoting *Gill v. United States,* 429 F.2d 1072, 1079 (5th Cir.1970))); *Eberts v. Businesspeople Personnel Services, Inc.,* 620 S.W.2d 861, 864 (Tex.Civ.App.—Dallas 1981, no writ) (providing that where damages remedies are duplicative, liquidated damages cannot be recovered in addition to actual damages (citing *Robert G. Beneke & Co. v. Cole,* 550 S.W.2d 321, 322 (Tex.Civ.App.—Dallas 1977, no writ))). American argues that its liquidated and cover damages compensated for distinct injuries resulting from Palmco's late and non-deliveries. Consequently, American argues that the magistrate judge erred in awarding only one measure of damages.

The magistrate judge's findings of fact support the conclusion that American suffered distinct injuries from Palmco's late and non-deliveries. The magistrate judge found that Palmco's late

---

claim does not mean that it was without a legal remedy. Therefore, Palmco is not entitled to equitable relief.

deliveries reduced American's flatware inventory stock to a near zero level, resulting in American having to curtail meal service. *See* Record on Appeal at 274-75. The magistrate judge expressly found that the reduction in meal service adversely affected the image and reputation of American. *See id.* at 275. In addition, the magistrate judge found that shortages in flatware at one location created logistical problems in substituting meals. *See id.* The magistrate judge found that the damage to American's reputation, and the additional costs due to shuffling of meals, were clear, though not readily ascertainable. *See id.* Based upon these findings, the magistrate judge concluded that "American had proved up liquidated damages under the contract ... in the sum of $81,584." *Id.* at 453.

In contrast to the damage American incurred because of Palmco's late deliveries, Palmco's non-deliveries caused American readily ascertainable damage in the form of increased flatware costs. The magistrate judge expressly found that "American ... incurred additional expenses for knives, forks and spoons purchased under the spot orders to "cover' the supplies *not provided by Palmco under the contract*...." *See id.* at 282 (emphasis added). Palmco claims that the spot orders were used to cover the late deliveries. However, the magistrate judge expressly found that the spot orders were used to cover for non-deliveries of flatware. *See id.* Thus, American incurred distinct injuries from Palmco's separate breaches of the contract. Because American's liquidated and cover damages redressed different injuries, and thus were not duplicative, the magistrate judge erred in concluding that American was not entitled to receive both damage remedies. *See Louis Lyster General Contractor v. City of Las Vegas,* 83 N.M. 138, 489 P.2d 646, 654 (1971) (awarding both liquidated and cover damages where no duplication of damages occurred).

(ii)

American next claims that the magistrate judge erred in calculating the amount of damages to which it was entitled due to Palmco's 25% price increase. We review a factual finding as to the amount of damages for clear error. *See Albany Ins. Co. v. Bengal Marine, Inc.,* 857 F.2d 250, 253 (5th Cir.1988) ("Damages need not be proven with an exact degree of specificity, and we review the award under the clearly erroneous standard."). " "[A] factual finding may be set aside under the

clearly erroneous rule only if we are left, on review of the evidence, with the firm and definite conviction that a mistake had been committed.' " *McDaniel v. Temple Indep. School Dist.,* 770 F.2d 1340, 1347 (5th Cir.1985) (quoting *Oil, Chemical and Atomic Workers Int'l Union v. Ethyl Corp.,* 703 F.2d 933, 935 (5th Cir.1983)).

On April 4, 1988, Palmco requested price increases of approximately 25%, on the per unit prices to be charged for the remaining flatware to be delivered under the contract. *See* Record on Appeal, vol. 2, at 283. American reluctantly agreed to the price increases, but only after it had determined that no other supplier could fulfill its flatware requirements. *See id.* The magistrate judge found that the price increases were made under duress, and therefore void. *See id.* at 287. In fashioning a remedy, the magistrate judge only awarded American the amount it was overcharged on its two open purchase orders—those with an outstanding account balance.[10] American claims that the magistrate judge clearly erred in concluding that it was not also entitled to the amount it was overcharged for its other purchase orders—those delivered by Palmco, and paid-for in full by American. We agree.

The magistrate judge expressly found that the agreement to the price increases was void. The agreement included eight separate purchase orders, and was not limited to American's two open purchase orders. *See* Record Excerpts for Palmco at tab. 6. Thus, the magistrate judge clearly erred in not awarding American additional duress damages for the amount—$52,631—it was overcharged on those other purchase orders.[11]

D

---

[10]The magistrate found that American was overcharged the amount of $16,100 for the two open purchase orders. *See* Record on Appeal, vol. 2, at 455-56 n. 1. Since American still owed Palmco under the open invoices, the magistrate simply deducted $16,100 from the amount Palmco was entitled to receive as damages, for unpaid-for, delivered flatware. *See id.*

[11]Palmco does not argue that the price increases applied to other purchase orders, or dispute the amount of the overcharge on those purchase orders. Rather, Palmco argues that the magistrate, in not awarding additional duress damages for the purchase orders fully paid for by American, must have implicitly adopted its arguments of waiver, ratification, and estoppel. *See* Brief for Palmco at 43-45. The sole basis for Palmco's claim is that American made full payments to Palmco on certain purchase orders that contained the price increases. However, this fact is not determinative, because the magistrate found that the underlying agreement to pay for the purchase orders was made under duress.

The remaining issues before us concern the magistrate judge's assessment of attorneys' fees. We review an award of attorneys' fees for abuse of discretion. *Gulf Union Indus. Inc. v. Formation Sec., Inc.,* 842 F.2d 762, 766 (5th Cir.1988).

American argues that it is entitled to additional attorneys' fees, based upon the additional damages it is entitled to recover. The magistrate judge determined that each party should receive attorneys' fees in the amount of 60% of the amount each party recovered as damages. *See* Record on Appeal, vol. 2, at 450. The parties do not dispute the reasonableness of the magistrate judge's calculation of attorneys' fees. Rather, Palmco merely argues that American is not entitled to additional attorneys' fees because American has no legal entitlement to further damages. *See* Brief for Palmco at 45. Since we have determined that American is entitled to additional liquidated and duress damages, American is also entitled to 60% of this amount as additional attorneys' fees.

American next argues that the magistrate judge abused his discretion in awarding attorneys' fees to Palmco. Texas law permits recovery of attorneys' fees "in addition to the amount of a valid claim and costs, if a claim is for ... an oral or written contract." Tex.Civ.Prac. & Rem.Code Ann. § 38.001 (Vernon 1986). A party has a valid contract claim under § 38.001 when it demonstrates that it is entitled to recover on the claim. *See ITT Commercial Finance Corp. v. Riehn,* 796 S.W.2d 248, 256 (Tex.App.—Dallas 1990, no writ) ("[T]he holder [of the claim] must have possessed a claim such that he could have prosecuted it to a judgment for money or value, even if his opponent had never filed his competing claim."). The magistrate judge expressly found that "Palmco is entitled to an offset of $62,870 against the damages to be awarded to American Airlines for flatware products delivered to American Airlines for which American Airlines has not previously paid." Record on Appeal, vol. 2, at 455. American argues that because Palmco failed to gain a net recovery in damages,[12] it was not entitled to attorneys' fees. We disagree.

That American's damages award more than offset Palmco's recovery does not mean that Palmco did not possess a valid contract claim for damages. A party need not have a net recovery in

---

[12]The magistrate concluded that American was entitled to receive $112,410 in cover damages, more than offsetting Palmco's award of $62,870. *See* Record on Appeal, vol. 2, at 454.

order to obtain an attorney's fee award. *See ITT Commercial,* 796 S.W.2d at 256 ("[T]he fact that the valid claim of one party may be exceeded by the opponent's claim does not defeat the right to attorney's fees." (citing *McKinley v. Drozd,* 685 S.W.2d 7, 10-11 (Tex.1985)). Had American failed to pursue its counter-claims and thereby gained no award, Palmco would still have had a valid claim against American for the unpaid-for, delivered flatware. Thus, Palmco had a valid claim for contract damages. *See ITT Commercial,* 796 S.W.2d at 256. Accordingly, the magistrate judge did not abuse his discretion in awarding attorneys' fees to Palmco.[13]

Lastly, Palmco claims that the magistrate judge abused his discretion in concluding that it was not entitled to additional attorneys' fees for the amount—$42,134—Palmco recovered from American after suit, but before trial. The magistrate judge entered a separate order for attorneys' fees, limiting the fees to 60% of the monetary amount on which each party prevailed. *See* Record on Appeal, vol. 2, at 450. The magistrate judge specifically excluded from that calculation the amount which Palmco recovered from American after suit, but before trial, finding that the payments were "inadvertently made," and were not the result of Palmco's then-pending lawsuit against American.[14] *Id.* at 451 n. 3. Palmco argues that the magistrate judge abused his discretion in excluding these payments from the calculation of attorneys' fees. We disagree. Because the magistrate judge found that American's post-suit, pre-trial payments were "inadvertently made"—a factual finding we cannot reverse unless clearly erroneous[15]—excluding these payments from a calculation of attorneys' fees was not an abuse

---

[13]American maintains that its § 2.717 price reduction remedy defeated Palmco's contract claim against American for the unpaid-for, delivered flatware. *See* Reply Brief for American at 41-42 (citing *Created Gemstones, Inc. v. Union Carbide Corp.,* 47 N.Y.2d 250, 255, 391 N.E.2d 987, 989, 417 N.Y.S.2d 905, 907 (1979)) ("[A] buyer may defeat or diminish a seller's substantive action for goods sold and delivered by interposing a valid counterclaim for breach of the underlying sales agreement."). The *Gemstones* decision does not bind this Court, as no Texas decision has held that a buyer's valid counterclaim for breach of the underlying sales agreement invalidates a seller's claim for unpaid-for, delivered goods, particularly as applied to attorneys' fees.

[14]The magistrate apparently relied upon the testimony of Nancy Willis, the senior purchasing agent for American responsible for administering the contract, who testified that against her specific orders, checks were sent to Palmco for delivered flatware. *See* Record on Appeal, vol. 4, at 89.

[15]*See McDaniel,* 770 F.2d at 1347.

of discretion.

## III

For the foregoing reasons, we hold that American gave proper notice of breach to Palmco.

We also AFFIRM the magistrate judge's judgment which holds that:

(1) American is not obligated to buy the 30,000 dozen knives in Palmco's possession when American cancelled the contract;

(2) Palmco is entitled to attorneys' fees for the amount it recovered as an offset against American's damage award;  and

(3) Palmco is not entitled to additional attorneys' fees for the post-suit, pre-trial payments it recovered from American.

However, we REVERSE the magistrate judge's judgment and render judgment that:

(1) American is entitled to recover, in addition to its cover damages, $81,584.00 in liquidated damages;

(2) American is entitled to recover $52,631.00 in additional duress damages;  and

(3) American is entitled to receive $80,529.00[16] in additional attorneys' fees for its additional recoveries.

---

[16]The magistrate determined that each party should receive as attorneys' fees, 60% of any amount it received as damages.  *See* Record on Appeal, vol. 2, at 450.  Thus, American is entitled to receive an additional $80,529.00 in attorneys' fees for its additional recovery of liquidated and duress damages ($81,584.00 + $52,631.00 = $134,215.00 × 60% : $80,529.00).