**REVERSE and REMAND, and Opinion Filed December 4, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-24-00053-CV**

**ZANE M. RAPHAEL, Appellant**
**V.**
**CAMDEN DEVELOPMENT, INC., Appellee**

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-23-01385**

## MEMORANDUM OPINION

Before Justices Molberg, Nowell, and Kennedy
Opinion by Justice Molberg

Zane Raphael appeals from the denial by operation of law of his motion to dismiss under the Texas Citizens Participation Act. He contends he established that appellee Camden Development, Inc.'s counterclaims for breach of contract and tortious interference are based on or in response to his exercise of the right to petition, and that Camden failed to establish by clear and specific evidence a prima facie case for each essential element of the two claims. Because we conclude the trial court erred in failing to dismiss the breach of contract counterclaim, we reverse and remand in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

# Background

Raphael alleged in his original petition that he was a resident at a Camden-owned apartment complex, beginning July 1, 2022. Three weeks after moving in, his truck was stolen from the residential parking lot, and he reported the theft to Camden and the Dallas Police Department. Raphael informed Camden it did not have adequate security, cameras "or any other reasonable measures to prevent similar incidents as well as protect its residents and their property," but he alleged, Camden failed to take reasonable responsive measures. He alleged that, from August through November 2022, garage break-ins, theft, and property damage became routine, and Raphael's garage was broken into at least three times, resulting in the loss of thousands of dollars of property. Raphael reported each incident to Camden, which told him to take protective measures, such as locking his garage door. Despite Raphael taking every reasonable measure he could to protect his property, he alleged that Camden's negligence and failure to abide by its obligations subjected him to repeated break-ins. Based upon these allegations, Raphael asserted claims for negligence, DTPA violations, breach of contract, common law fraud/fraudulent inducement, and negligent misrepresentation.

Camden answered and raised several affirmative defenses, including waiver and release. On September 21, 2023, Camden also filed counterclaims, asserting that Raphael's claims were "all expressly covered under the lease," and it had to

incur attorney's fees defending against the claims. Camden alleged the parties agreed in Raphael's lease that Camden (1) "is not liable to Plaintiff for any injury, damage, or loss caused as a result of any problem with the performance of any security-related mechanism"; (2) "did not make any representation or warranty that any security-related mechanism would not be compromised, circumvented, or malfunction, or would prevent loss by burglary, theft, or other criminal conduct"; and (3) "is not responsible for Plaintiff's personal property (including any vehicles) resulting from criminal acts of others." Camden alleged Raphael further agreed in the lease to maintain renter's insurance to protect his property and to waive any insurance subrogation rights or claims against Camden related to losses to his property. Camden also alleged Raphael encouraged other tenants to take legal action against Camden that would be a breach of these other tenants' contracts.

Camden asserted a claim for breach of contract, because, it argued, "as a result of filing of Plaintiff's Original Petition, Plaintiff has breached and defaulted on the contractual lease agreement by seeking damages from defendant for losses covered by plaintiff's renter's insurance, in direct breach of plaintiff's contractual agreement." Camden alleged the breach resulted in damages "in the form of attorney's fees and court costs and expenses, as well as loss of the benefits of the contract(s)," totaling at least $49,000. Based upon its allegation that Raphael solicited other tenants to take legal action against it, Camden asserted a claim for

tortious interference with contractual relations. Camden sought attorney's fees under Chapter 38.001 of the civil practice and remedies code and the "default provision" of the lease.

A few days after filing its original counterclaims, Camden filed a first amended counterclaim in which it dropped its tortious interference with contractual relations cause of action.

On November 6, 2023, Raphael filed a motion to dismiss pursuant to the TCPA. Raphael contended Camden's counterclaim was based on or brought in response to his right to petition because, he argued, it was based on and brought in response to his original petition. Raphael further argued Camden could not establish a prima facie case for breach of contract because there was no evidence Camden performed its contractual obligations, Raphael breached his obligations, or Camden suffered any damages due to the breach. Regarding this latter point, Raphael contended attorney's fees are not recoverable as actual damages, and Camden had therefore failed to even allege it suffered damages resulting from any breach.

On November 30, 2023, Camden filed a second amended counterclaim and a response to Raphael's TCPA motion to dismiss. The second amended counterclaim differed from its predecessor by including a statement that damages resulting from Raphael's breach included "loss of employee manhours related to the naturally flowing consequences of Plaintiff's breach," or alternatively, nominal damages. In

its response to the motion to dismiss, it argued the TCPA did not apply to its breach of contract claim because the parties "specifically contracted that plaintiff waived claims against defendant for plaintiff's personal property." Camden also argued it presented evidence establishing a prima facie case for each essential element of breach of contract.

On December 4, 2023, Raphael filed a reply to Camden's response to his motion to dismiss, arguing, among other things, that Camden "has not even attempted to establish a prima facie case for its tortious interference claim" and had failed to establish a prima facie case for its breach of contract claim.

After a hearing on the TCPA motion, the trial court did not rule on the motion within thirty days following the hearing, so it was denied by operation of law. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.005(a), 27.008(a). This interlocutory appeal followed.

## Discussion

"The [TCPA] protects citizens who petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them." *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding) (citing TEX. CIV. PRAC. & REM. CODE § 27.001–.011) (footnote omitted). Its purpose "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by

law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002.

Under the TCPA, a party may file a motion to dismiss a legal action "based on" or "in response to a party's exercise of the right to free speech, right to petition, or right of association[.]" *Id.* § 27.003(a). A three-step decisional process follows. First, the trial court must dismiss the legal action "if the moving party demonstrates that the legal action is based on or is in response to: (1) the party's exercise of: (A) the right of free speech; (B) the right to petition; or (C) the right of association; or (2) the act of a party described by Section 27.010(b)." *Id.* § 27.005(c).

Second, the court "may not dismiss a legal action under this section if the party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). This prima facie standard requires the nonmovant to bring forth "only the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding) (internal quotation marks omitted). Prima facie evidence is evidence that will suffice as proof of a fact in issue; "[i]n other words, a prima facie case is one that will entitle a party to recover if no evidence to the contrary is offered by the opposite party." *Serafine v. Blunt*, 466 S.W.3d 352, 358 (Tex. App.—Austin 2015, no pet.). "Clear and specific" evidence is unambiguous, free from doubt, and

explicit; "the term 'clear and specific' pertains to the quality of evidence required to establish a prima facie case," while "the term 'prima facie case' pertains to the amount of evidence necessary for a plaintiff to carry its minimal factual burden to support a rational inference establishing each essential element of a claim." *See Marble Ridge Cap. LP v. Neiman Marcus Grp., Inc.*, 611 S.W.3d 113, 122 (Tex. App.—Dallas 2020, pet. dism'd).

Finally, the court must dismiss the legal action if the movant "establishes an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." TEX. CIV. PRAC. & REM. CODE § 27.005(d).

"Legal action" under the TCPA "means a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal, declaratory, or equitable relief." *Id.* § 27.001(6). "Exercise of the right to petition" means, among other things, a communication in or pertaining to a judicial proceeding. *Id.* § 27.001(4). "'Communication' includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). Judicial proceeding means an actual, pending judicial proceeding. *Levatino v. Apple Tree Cafe Touring, Inc.*, 486 S.W.3d 724, 728 (Tex. App.—Dallas 2016, pet. denied). A communication "pertaining to" a judicial proceeding does not include anticipated or potential future judicial proceedings. *Id.* "To trigger the TCPA's protection, the 'legal action' must

–7–

be factually predicated on the alleged conduct that falls within the scope of the TCPA's definition of the exercise of the right to petition." *Sorkin v. P.T. Atlas Mfg., L.L.C.*, No. 05-21-00657-CV, 2022 WL 780444, at *3 (Tex. App.—Dallas Mar. 15, 2022, pet. denied) (mem. op.). Exercise of the right of free speech means "a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE § 27.001(3). Matters of public concern include statements or activities regarding "a matter of political, social, or other interest to the community[,]" or "a subject of concern to the public." *Id.* § 27.001(7). But "[a] private communication made in connection with a business dispute is not a matter of public concern under the TCPA." *Erdner v. Highland Park Emergency Ctr., LLC*, 580 S.W.3d 269, 276 (Tex. App.—Dallas 2019, pet. denied).

When the text of the TCPA dictates the outcome of a case, we review the trial court's ruling de novo. *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 132 (Tex. 2019). In our review, we consider "the pleadings, evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based." TEX. CIV. PRAC. & REM. CODE § 27.006(a); *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 424 (Tex. App.—Dallas 2019, pet. denied).

In construing the TCPA, we must determine and give effect to the Legislature's intent. *See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25

–8–

(Tex. 2003). The best guide to what lawmakers intended is the enacted language of a statute, "which necessarily includes any enacted statements of policy or purpose." *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018). Moreover, we determine legislative intent from considering an act as a whole rather than its parts in isolation. *City of San Antonio*, 111 S.W.3d at 25. We construe the statute's words "according to their plain and common meaning, unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results." *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008) (citations omitted). We "may not judicially amend a statute by adding words that are not contained in the language of the statute." *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 508 (Tex. 2015).

*Tortious interference claim*

At the outset, we address the parties' disagreement as to whether Raphael sought to dismiss under the TCPA Camden's nonsuited tortious interference claim. As described above, Raphael only raised Camden's breach of contract counterclaim in his motion to dismiss and did not address the tortious interference claim until he filed a reply to Camden's response to his motion to dismiss. Accordingly, we conclude Raphael's complaints relating to the tortious interference claim are not properly before us. *See* Tex. R. App. P. 33.1(a)(1). Even supposing Raphael's reply to Camden's response could be construed as an additional TCPA motion to dismiss, it was not timely as a motion to dismiss given that it was filed later than the sixtieth

day after the date of service of the original counterclaims.  *See* TEX. CIV. PRAC. & REM. CODE § 27.003(b) ("A motion to dismiss a legal action under this section must be filed not later than the 60th day after the date of service of the legal action."). We overrule Raphael's issues as to the tortious interference claim.

*Breach of contract claim*

We now turn to Camden's sole remaining cause of action, breach of contract. Raphael argued in the trial court, and now on appeal, that this claim is based on or in response to his exercise of the right to petition because it is based on the filing of his original petition against Camden.  We agree.  As described above, Camden alleged Raphael breached the contract "as a result of filing of [his] Original Petition" because the contract, it argued, precluded such a suit.

We conclude Raphael has demonstrated that the counterclaim—a legal action—is based on Raphael's exercise of the right to petition—his filing a petition. *See* TEX. CIV. PRAC. & REM. CODE § 27.001(6) (legal action includes a counterclaim), § 27.001(1), (4) (exercise of right to petition includes making or submitting a statement or document in a judicial proceeding); *LaCore Enters., LLC v. Angles*, No. 05-21-00798-CV, 2023 WL 2607562, at *6 (Tex. App.—Dallas Mar. 23, 2023, no pet.) (mem. op.) (petition is communication in judicial proceeding); *see also Johnson v. Windsong Ranch Cmty., Ass'n, Inc.*, No. 02-23-00385-CV, 2024 WL 725523, at *3 (Tex. App.—Fort Worth Feb. 22, 2024, no pet.) (mem. op.)

(concluding breach of contract counterclaim was based on or in response to movant's exercise of right to petition when counterclaiming party alleged movant triggered contract's indemnification provision and breached the contract by filing suit).

Despite this, Camden argues the TCPA cannot apply to its breach of contract claim because Raphael waived his right to file such a suit in the contract. It points in particular to section 9(d) of the contract:

> Protection of Resident's Property. Owner is not responsible for, and will not provide fire or casualty insurance for, the personal property (including any vehicles) of Resident or Occupants of the Unit. Neither Owner nor Owner's managing agent shall be liable to Resident, other Occupants of the Unit or their respective guests for any damage, injury or loss to person or property (furniture, jewelry, clothing, etc.) from fire, flood, water leaks, rain, hail, ice, snow, smoke, lightning, wind, explosions, interruption of utilities, the criminal acts of others or other occurrences unless such damage, injury or loss is caused exclusively by the negligence of Owner. Owner has no duty to remove ice, sleet, or snow from any areas within the Community. Resident assumes all risks with respect to, and Resident is required to secure insurance in accordance with subparagraph (a) above. Unless prohibited by law, Resident waives any insurance subrogation rights or claims against Owner, Owner's managing agent or their respective insurers.

Even supposing a party may contractually limit its TCPA rights, *see Judwin Props. Inc. v. Lewis*, 615 S.W.3d 338, 347 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (concluding counterclaim alleging plaintiff breached contract by filing suit was not factually predicated on plaintiff's exercise of right to petition when plaintiff agreed in contract to submit any disputes to mediation before commencing litigation and thus "contractually restricted its normally unrestricted constitutional right to

–11–

petition"), we cannot agree that through this language Raphael contractually limited his right to petition. While the lease agreement states Camden is not responsible or liable for certain losses, we find no language in the agreement limiting Raphael's right to commence litigation as in *Judwin* or similar cases. *See Howard v. Matterhorn Energy, LLC*, 628 S.W.3d 319, 331 (Tex. App.—Texarkana 2021, no pet.) (concluding TCPA did not apply to breach of contract counterclaim alleging plaintiffs' filing of suit breached contract when plaintiffs agreed in lease not to commence litigation until expiration of sixty days following notice of claim and thus contractually restricted their right to petition); *Lona Hills Ranch, LLC v. Creative Oil & Gas Operating, LLC*, 549 S.W.3d 839, 848 (Tex. App.—Austin 2018), *rev'd in part on other grounds*, 591 S.W.3d 127 (same). Thus, we reject Camden's contention that the TCPA cannot apply to its breach of contract counterclaim.

Camden also seems to argue that because its claim was a compulsory counterclaim, *see* TEX. R. CIV. P. 97(a), the TCPA cannot apply. The terms of the TCPA itself make this claim untenable, as § 27.009(c) contemplates "dismissal of a compulsory counterclaim" under the TCPA. *See* TEX. CIV. PRAC. & REM. CODE § 27.009(c) (permitting but not mandating award of reasonable attorney's fees to movant if court finds that the compulsory counterclaim is frivolous or solely intended for delay).

We next must consider whether Camden established by clear and specific evidence a prima facie case for each essential element of its breach of contract claim. The essential elements of this claim are that (1) a valid contract exists, (2) Camden performed or tendered performance, (3) Raphael breached the terms of the contract, and (4) Camden sustained damages as a result of the breach. *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018).

We will consider whether Camden established by clear and specific evidence a prima facie case that it sustained damages as a result of any breach. *See AKOE, LLC v. RJ Mach. Inc.*, No. 03-19-00491-CV, 2020 WL 5099960, at *5 (Tex. App.—Austin Aug. 26, 2020, no pet.) (mem. op.) ("TCPA requires at this stage 'clear and specific evidence' of a 'prima facie case' as to every essential element of each and every claim, including damages"). In making this determination, we may consider, as stated above, the pleadings,[1] evidence a court could consider under rule 166a, Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based. *See* TEX. CIV. PRAC. & REM. CODE § 27.006(a).

Camden offered no affidavits to establish a prima facie case—or any other evidence a court could consider under rule 166a—so we are limited to considering

---

[1] In our review, we will consider the second amended original counterclaim. *See Windsong Ranch Cmty.*, 2024 WL 725523, at *1 n.3 (stating that amended counterclaim filed before hearing on TCPA motion was live pleading for purposes of TCPA analysis).

its pleadings. *See Breakaway Practice, LLC v. Lowther*, No. 05-18-00229-CV, 2018 WL 6695544, at \*2 (Tex. App.—Dallas Dec. 20, 2018, pet. denied) (mem. op.) ("Under [§ 27.006(a)], pleadings are to be considered as evidence, regardless of whether they are offered as such."). Camden alleged it sustained damages in the form of attorney's fees, court costs, expenses, "loss of the benefits of the contract(s)," "loss of employee manhours related to the naturally flowing consequences of" Raphael filing suit, or alternatively, nominal damages. As to attorney's fees, costs, and litigation expenses—including lost manhours responding to litigation—they are generally not recoverable as damages in and of themselves, and this is not a case in which the general rule does not apply.[2] *See Woodhaven Partners, Ltd. v. Shamoun & Norman, L.L.P.*, 422 S.W.3d 821, 837 (Tex. App.—Dallas 2014, no pet.); *Eberts v. Businesspeople Pers. Servs., Inc.*, 620 S.W.2d 861, 863 (Tex. App.—Dallas 1981, no writ) ("Expenses of litigation are not recoverable as damages unless expressly provided by statute or contract. . . . This rule applies to a litigant's loss of time."). Additionally, Camden's other allegation of "loss of the benefits of the contract(s)" is too vague and conclusory to constitute "clear and specific" evidence of damages. *See Marble Ridge Cap.*, 611 S.W.3d at 122 (stating

---

[2] The "two situations where [attorney's fees] may be considered actual damages" are not present here. *See RAS Group, Inc. v. Rent-A-Ctr. E., Inc.*, 335 S.W.3d 630, 641 (Tex. App.—Dallas 2010, no pet.). Those two situations arise when, (1) "[i]n a legal malpractice case, the plaintiff's damages may include the attorney's fees paid to the defendant-attorney in the underlying case," and (2) "the defendant's tort requires a party to protect its own interests by bringing or defending an action against a third party, the plaintiff may recover from the defendant the attorney's fees incurred in the action against the third party." *Id.*

–14–

that "clear and specific" evidence is unambiguous, free from doubt, and explicit, and the term "clear and specific" pertains to the quality of evidence required to establish a prima facie case). Finally, we cannot conclude that pleading "nominal damages" suffices as clear and specific evidence establishing a prima facie case for damages. Nominal damages are damages in name only, *see Ameritech Servs., Inc. v. SCA Promotions, Inc.*, No. 05-03-00247-CV, 2004 WL 237760, at *3–4 (Tex. App.—Dallas Feb. 10, 2004, no pet.) (mem. op.), that are awarded specifically when "damages are not proved," *see Huntington Corp. v. Inwood Const. Co.*, 472 S.W.2d 804, 808 (Tex. App.—Dallas 1971, writ ref'd n.r.e.). "[N]ominal damages are simply a vehicle for taxing the defendant with costs" and, if "a party file[s] a petition for nominal damages only, he has failed to state a cause of action." *ITT Com. Fin. Corp. v. Riehn*, 796 S.W.2d 248, 257 (Tex. App.—Dallas 1990, no writ). Given this, we conclude Camden failed to establish by clear and specific evidence a prima facie case for, at the very least, the element of damages. Accordingly, because Camden failed in its step-two burden under the TCPA, we conclude the trial court erred in failing to grant Raphael's motion to dismiss as to the breach of contract claim.

*Attorney's fees*

If the court orders dismissal of a legal action—except for compulsory counterclaims, addressed below—under the TCPA, the court (1) shall award to the moving party court costs and reasonable attorney's fees incurred in defending

against the legal action; and (2) may award to the moving party sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter. TEX. CIV. PRAC. & REM. CODE § 27.009(a). If the court orders dismissal of a compulsory counterclaim, the court *may* award to the moving party reasonable attorney's fees incurred in defending against the counterclaim if the court finds that the counterclaim is frivolous or solely intended for delay. *Id.* § 27.009(c).

A party incurs attorney's fees under § 27.009 when it becomes liable for the attorney's fees. *Cruz v. Van Sickle*, 452 S.W.3d 503, 524 (Tex. App.—Dallas 2014, pet. struck); *Garcia v. Gomez*, 319 S.W.3d 638, 642 (Tex. 2010) ("A fee is incurred when one becomes liable for it."); *cf. Jackson v. State Office of Admin. Hearings*, 351 S.W.3d 290, 299 (Tex. 2011) (under statute permitting recovery of "incurred" attorney's fees, pro se attorney-litigant did not incur attorney's fees because he did not at any time become liable for attorney's fees and thus could not recover fees). Here, the record reveals Raphael represented himself in the trial court and on appeal, and we consequently conclude he cannot recover attorney's fees under either § 27.009(a) or (c) because he did not incur any such fees. *See Cruz*, 452 S.W.3d at 524 (concluding that, where the undisputed evidence established the parties were represented pro bono, the parties did not incur any attorney's fees and thus were not entitled to award of fees under TCPA); *cf. Jackson*, 351 S.W.3d at 299. However,

we remand for the trial court to award, under § 27.009(a)(1), any court costs incurred by Raphael in defending against the legal action and to consider his claim for sanctions under § 27.009(a)(2). *See Doe v. Cruz*, 683 S.W.3d 475, 503 (Tex. App.—San Antonio 2023, no pet.) (concluding movant should recover costs and could recover sanctions under § 27.009(a) even though the legal action dismissed was a compulsory counterclaim because § 27.009(c) addresses only attorney's fees and, thus, "subsection (a) applies in all other respects").

## Conclusion

We sustain Raphael's issues on appeal as to Camden's breach of contract claim. We reverse the denial of Raphael's TCPA motion to dismiss as to this claim, and we remand to the trial court to dismiss this claim and to address court costs and sanctions in accordance with this opinion.

240053f.p05

/Ken Molberg/
KEN MOLBERG
JUSTICE



# JUDGMENT

ZANE M. RAPHAEL, Appellant

No. 05-24-00053-CV   V.

CAMDEN DEVELOPMENT, INC.,
Appellee

On Appeal from the 193rd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-23-01385.
Opinion delivered by Justice
Molberg. Justices Nowell and
Kennedy participating.

In accordance with this Court's opinion of this date, we **REVERSE** the denial by operation of law of appellant's motion to dismiss as to appellee's breach of contract claim. We **REMAND** to the trial court to dismiss that claim and for consideration of court costs and sanctions in accordance with this opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 4th day of December, 2024.