**BRANDTJEN & KLUGE, Inc. v. MANNEY.**
No. 15213.

Court of Civil Appeals of Texas.
Fort Worth.

March 23, 1951.

Rehearing Denied April 20, 1951.

R. V. Nichols, Fort Worth, for appellant.

Bonney, Paxton & Wade, Dallas, for appellee.

HALL, Justice.

In the year 1946, appellee Enos ·E. Manney, dba Manney Printing Company, entered into an agreement with appellant Brandtjen & Kluge, Inc., to purchase from appellant one 10x15 six roller Kluge automatic platen press. The press was delivered to appellee on or about September 1, 1948.

Controversy arose between the parties as to the ultimate price of the machine under the terms of the original written contract. Thus appellant ·sued appellee for the sum of $2525, less $50 payment made by appellee, as it contends was the price of the machine under the contract. It sequestered the property.

Appellee answered that the price of the machine as set out in the contract was the sum of $1,622, plus twenty per cent, or a total price of $1,946.40, less the $50 payment, also less two per cent discount if paid within thirty days from receipt of the machine.

Appellee replevied the property and in his trial amendment to his original answer and cross action plead and prayed for $2,000 exemplary damages and $7,100 actual damages resulting to him because of appellant's unlawfully, wrongfully and maliciously sequestering the property and forcing appellee to replevy same.

Substance of the jury's answers to special issues submitted is as follows:

(1) That the clause in the contract, "These prices subject to increase at vendor's option to effective permitted legal prices prevailing on date of shipment with additional cash increase subject to same terms," was not in the instrument when it was signed by Enos E. Manney.

(2) and (3) When appellant's agent executed an affidavit for sequestration it did not believe nor have good cause to believe appellee would injure the press.

(4) That appellee suffered actual damages as a result of appellant's suing out writ of sequestration.

(5) That said amount of actual damages (which was limited by the court to the amount appellee expended for a surety bond) was $100.

(6) and (7) Appellee was entitled to exemplary damages in the sum of $2,000.

The trial court, in its judgment, granted in part appellant's motion for judgment non obstante veredicto, based on the assumption that the evidence was insufficient to support its action in submitting special issues 2 through 7 relative to damages for wrongful sequestration and refused to enter judgment upon the jury's findings to these issues. It entered judgment for appellant in the sum of $1,896.40.

Appellant submits its appeal upon two points. First point challenges correctness of the trial court's action in rendering judgment for appellee upon the jury's answer to special issue No. 1, to the effect that such clause, supra, was not in the contract at the time it was executed by appellee, because the same is against the overwhelming weight of the evidence.

Point two: That the trial court's admitted error in submitting to the jury special issues 2 through 7, supra, pertaining to wrongful sequestration, over the objection of appellant, and the jury's answer thereto clearly present a factual situation which demonstrates the jury was so controlled and dominated by passion and prejudice that it failed to consider the evidence on the merits of the case.

The contract introduced in evidence has some very small blank lines; in one of them was written by the scrivener "Plus 20%"; in another was written by the scrivener "No Installation Required"; and immediately below between the next two small lines there had been inserted, which appears to have been done by the use of a rubber stamp, the following: "These prices subject to increase at

vendor's option to effective permitted legal prices prevailing on date of shipment with additional cash increase subject to same terms," and immediately to the left of these two lines appear appellee's initials, indicating he had oked at least some of the above writings in these small lines. The contract further shows that the original price of the machine was $1,622, which amount has been struck through and replaced with the sum of $2,525; at the side opposite the "Plus 20%" line, there was written $324.40, which has been struck through; in the total purchase price column there was written $1,946.40, also struck through and therein inserted in its place the sum of $2,525; appellee was given credit for $50, leaving the total amount due $2,475.

Due to injuries received from an automobile accident, appellee was not able to attend the trial. His wife, Mrs. Irene Manney, testified, in part, substantially as follows: That during the month of December, 1946, appellant's agents entered into negotiations with her husband to purchase the machine in question. She was present and participated in the conversation. Purpose of executing such order for the machine was to save additional cost in buying at a later date. She testified she hesitated to go into a contract not knowing when appellant could make delivery. Mr. Boyd, one of its agents, answered: "Well, I'll tell you," he said, "We are not having so much trouble with production at the plant as we are with erectors. * * * Our bottle neck is erectors." Mrs. Manney testified: "He said, 'Our big bottle neck is the trouble with obtaining erectors.' Mr. Manney said, 'Well, as far as the erector is concerned, I dont need an erector. I can erect it myself. All I need is the press.' Mr. Boyd said, 'If you waive the erector, I think we can give you good delivery on this press. In fact,' he said, 'I feel safe in saying that I believe we can have that to you in ninety days.'" Thereupon appellee initialed the phrase, "No Installation Required," executed the contract, also a check in the sum of $50 for down payment and delivered them to appellant's agents. That

she was spending approximately fourteen hours a day in the office. That the printed statement inserted in the instrument by rubber stamp pertaining to increase in prices was not in the contract and was not agreed upon by either her or her husband; that appellant's agents took the check and the three forms of contract signed by appellee and sent them to appellant company to be approved by same; that a copy was sent to them along with the invoice a few days after arrival of the press.

We find the above testimony sufficient to support the jury's finding in its answer to special issue No. 1, and overrule appellant's first point.

■ Under the above stated facts, we do not believe the jury made its finding to special issue No. 1 through hatred, malice, passion or prejudice, even though it found appellant guilty of exemplary damages in the sum of $2,000. We are unable to find from the record as a whole that appellant's rights were prejudiced by the trial court's action in submitting special issues 2 through 7 and later denying appellee recovery for both actual and exemplary damages. Hence, appellant's second point is overruled.

Appellee in his cross assignments cites as error action of the trial court in refusing to grant him judgment for the sum of $100 actual damages awarded by the jury and the further sum of $900 ($1,100 voluntarily remitted from the finding by the jury of $2,000) as exemplary damages.

As stated before, special issues 2 to 7, inclusive, submitted questions pertaining to actual and exemplary damages for wrongful sequestration. The trial court disregarded the answers to these issues and rendered judgment denying appellee a recovery for either actual or exemplary damages.

■ The only issue of actual damages submitted to the jury concerned the expenditure of $100 by appellee for premium on the replevy bond. Appellee cites the following cases from other jurisdictions in support of his claim that the cost of the premium for the bond should have recovered as actual damages for wrongful

sequestration: Gordon v. Kentucky, Midland Coal Co., 152 Tenn. 267, 278 S.W. 68, 42 A.L.R. 1052; Smith v. American Bonding Co., 160 N.C. 574, 76 S.E. 481; Tullis v. McClary, 128 Iowa 493, 104 N.W. 505, 42 A.L.R. 1057. No Texas cases have been cited by either party, nor have we found any, bearing directly on this question. The general policy of the Texas law appears to be that parties to a suit are not allowed recovery, either as costs of suit or as damages, for expenses incurred in prosecuting or defending the suit, such as attorney's fees, traveling expenses, etc., unless recovery for such items is expressly provided for by statute, or is recoverable under usages of equity. To quote from 38 Tex.Jur., p. 275, sec. 109: "The pecuniary loss sustained by a defendant in the defense of a suit cannot be considered as actual damages recoverable for wrongful sequestration. But in order to enable the jury to act advisedly in awarding exemplary damages, the defendant in the sequestration proceedings may prove all expenses and other losses to which he was put."

Although the reasoning in the cited cases is to some degree persuasive, it is our belief that the premium for the replevy bond in the present instance does not represent a recoverable item of actual damages. In numerous other instances which we might think of a party to litigation may pay a bond premium in connection with the prosecution or defense of litigation, but recovery therefor against the opposite party is not usually allowed.

■ The claim for exemplary damages must fall for two reasons. First, exemplary damages may be recovered only where actual damages have been sustained. 38 Tex.Jur., p. 276, sec. 110. Second, the proof in the case before us does not warrant a recovery for exemplary damages.

We have examined the record in this case and find that the trial court did not err in sustaining appellant's motion for judgment non obstante veredicto pertaining to the jury's findings to special issues 2 through 7, inclusive.

Judgment of the trial court is affirmed